UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SUNDAY KAYODE KUNKUSHI,

                    Petitioner,

          v.

WARDEN, et al.,

                    Respondents.

Case No. 5:25-cv-01608-SRM-PVC

**ORDER CONVERTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER TO A MOTION FOR A PRELIMINARY INJUNCTION AND GRANTING PRELIMINARY INJUNCTION [32]**

Before the Court is Petitioner Sunday Kayode Kunkushi's ("Kunkushi") *ex parte* application for a temporary restraining order. Dkt. 32. Kunkushi notified Respondents Warden, Ernesto Santacruz Jr., Kristi Noem, and Pamela J. Bondi  (collectively, "Respondents") of his intention to file this application. *Id.* at 2. Upon the filing of the *ex parte* application, the Court set a briefing schedule and ordered Kunkushi to notify Respondents of that order. Dkt. 33 at 1–2. Kunkushi served a copy of the briefing schedule order on Respondents on March 3, 2026. Dkt. 34. Respondents subsequently filed their opposition to the *ex parte* application. Dkt. 35. Petitioner filed a reply in support of the *ex parte* application. Dkt. 36.

Because Respondents received notice, had an opportunity to respond, and the standards for issuing a temporary restraining order and a preliminary injunction are the

-1-

same, the Court converts the *ex parte* application for a temporary restraining order into a motion for a preliminary injunction. *See Partovi v. Bondi*, No. 2:25-cv-02283, 2026 WL 93124, at *3 (D. Nev. Jan. 13, 2026) (converting *ex parte* application for a temporary restraining order to a motion for a preliminary injunction where respondents received notice of the application and were given an opportunity to respond); *S. v. Albarran*, No. 1:25-cv-01505, 2025 WL 3521302, at *4 (E.D. Cal. Dec. 8, 2025) (similar).

The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The motion for a preliminary injunction is **GRANTED**.

## I.    FACTUAL BACKGROUND

The following facts are derived from the verified allegations in the First Amended Petition for Writ of Habeas Corpus ("FAP"), Dkt. 28, and Kunkushi's declaration that was cited in the *ex parte* application, *see* Dkt. 32 at 17 (citing Dkt. 12-1 at 5). Kunkushi is a Nigerian citizen. Dkt. 28 at 2. He has been living in the United States since February 2014 when he last entered with a visitor visa. *Id.* Kunkushi was placed into removal proceedings after being convicted for attempted transportation of marijuana for sale in Arizona. *Id.* He applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") before the immigration court. *Id.* The immigration judge denied his application and ordered him removed on December 19, 2018. *Id.* On his own, Kunkushi appealed the removal order to the Board of Immigration Appeals ("BIA"), and it dismissed the appeal on May 22, 2019. *Id.* He then petitioned the United States Court of Appeals for the Ninth Circuit to review the BIA's decision. *Id.* On July 16, 2020, the Ninth Circuit dismissed the appeal and denied Kunkushi's request for a stay of removal. *Id.* Kunkushi remained detained while these appeals were pending. *Id.* In 2021, Immigration and Customs Enforcement ("ICE") released Kunkushi from immigration custody because it was unable to timely obtain a travel document to Nigeria. *Id.* As a condition of release, Kunkushi was required to check-in with ICE. *Id.*

On June 4, 2025, Kunkushi appeared for his check-in with ICE. *Id.* at 3. ICE detained Kunkushi without notice of the reasons for his re-detention. *Id.* According to Kunkushi, he

-2-

did not receive a prompt informal interview after he was returned to custody. *See* Dkt. 32 at 17 (citing Dkt. 12-1 at 5).

On June 27, 2025, Kunkushi filed a Petition for Writ of Habeas Corpus. Dkt. 1. He asserted two claims against Respondents. *See id.* at 10–12. Under his first claim, Kunkushi alleged that his ongoing detention violates the Fifth Amendment's Due Process Clause because there was no significant likelihood that he could be removed to Nigeria in the reasonably foreseeable future. *Id.* at 10–11. Under his second claim, Kunkushi alleged that Respondents violated the Immigration and Nationality Act and implementing regulations because they failed to comply with the revocation procedures established under 8 C.F.R. §§ 241.4 and 241.13. *Id.* at 11–12. Notably, after the Petition had already been pending and Kunkushi had been in custody for 39 days, ICE served him with a Notice of Revocation of Release on July 13, 2025.[1] Dkt. 28 at 9 (citing Dkt. 12-3 at 2). The notice stated that ICE was revoking his release because it had determined there were "changed circumstances in [his] case" because his "case [was] under current review by the Government of Nigeria for the reissuance of a travel document." Dkt. 12-3 at 1.

On September 11, 2025, Magistrate Judge Pedro V. Castillo issued a Report and Recommendation denying the Petition upon a finding that Petitioner's removal was reasonably foreseeable because ICE received travel documents for Petitioner to Nigeria

---

[1] Kunkushi has been pursuing additional, non-habeas relief before the BIA and Ninth Circuit. On September 3, 2025, Kunkushi moved the BIA to reopen his removal proceedings so that he could apply for CAT protection on the grounds that he faces a likelihood of torture because of the changed circumstances given that he is suffering mental illness and the election of Babtunde Diya. Dkt. 28 at 2–3. The BIA denied that motion on November 24, 2025. *Id.* at 3. Three days later, Kunkushi petitioned the Ninth Circuit to review the BIA's denial of the motion to reopen the removal proceedings. *Id.* at 3. On November 28, 2025, the Ninth Circuit temporarily stayed Kunkushi's removal under its General Order 6.4. *Id.* at 3–4; *see also Kunkushi v. Blanche*, No. 25-7484 (9th Cir. filed Nov. 28, 2025) ("Under General Order 6.4, a temporary stay of removal is in effect until further order of the court."). As of today's date, the Ninth Circuit's docket shows that the temporary stay is still in effect.

and had scheduled a flight for him on September 16, 2025. Dkt. 18 at 6–7. Four days later, Kunkushi filed objections to the Report and Recommendation, Dkt. 20, and simultaneously moved to amend the Petition, Dkt. 21. Judge Castillo granted the motion to amend. Dkt. 27. Kunkushi filed the First Amended Petition (FAP) on December 22, 2025. Dkt. 28. In the FAP, he asserts three claims against Respondents. *See id.* at 12–16. Relevant here, under his first and second claims, Petitioner asserts that Respondents unlawfully revoked his release because they did not comply with the revocation procedures established under 8 C.F.R. § 241.13(i)(3) ("Section 241.13"). Dkt. 28 at 12–13. Petitioner now moves for preliminary injunctive relief seeking his immediate release from immigration custody. Respondents oppose. This matter is ready for decision.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs preliminary injunctions. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). To obtain a preliminary injunction, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a preliminary injunction is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a preliminary injunction under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant must show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, (4) and the injunction is in the public's interest. *All. for the Wild Rockies v.*

-4-

*Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a temporary restraining order. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes

beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III.   DISCUSSION

Petitioner argues he is entitled to preliminary injunctive relief on his revocation procedure claims and Fifth Amendment procedural due process claim. As discussed below, because he is entitled to the full scope of the requested relief on his revocation procedures claim, the Court need not address whether he is entitled to the same relief as to the latter claim.

### A.   Likelihood of Success on the Merits

The Immigration and Nationality Act details the procedures for removing a noncitizen from the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). When a noncitizen has been ordered removed, ICE must remove the noncitizen within 90 days. 8 U.S.C. § 1231(a)(1)(A). If the noncitizen is not removed within 90 days, he should be released subject to supervision governed by 8 C.F.R. §§ 241.4 ("Section 241.4") or 241.13 ("Section 241.13"). *See id.* § 1231(a)(3).

To revoke release of a noncitizen who has been ordered removed, the government must comply with the procedures established under 8 C.F.R. §§ 241.4(l)(1) and 241.13(i)(3). "Upon revocation," the government must notify a noncitizen of the reasons for revoking release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Once the noncitizen is returned to immigration custody, the government must then "conduct an initial informal interview promptly" to afford the noncitizen an opportunity to respond to the reasons for his revocation. *Id.* These regulations "were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Phan v. Noem*, No. 3:25-cv-02422, 2025 WL 2898977, at *3 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, No. 25-1788, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

ICE, like any federal agency, has a duty to follow its own regulations. *See United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010). Because these regulations were

promulgated to protect fundamental due process rights afforded to released noncitizens who have been ordered removed, ICE's failure to follow such regulations violates due process, even in the absence of prejudice to the noncitizen. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014) (explaining that a regulation that protects fundamental due process rights "implicates due process concerns even without a prejudice inquiry"); *see also Delkash v. Noem*, No. 5:25-cv-01675, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (concluding petitioner was likely to succeed on procedural due process claim where evidence showed the government failed to comply with due process requirements of Section 241.13(i)(3)); *Hoac v. Becerra*, No. 2:25-cv-01740, 2025 WL 1993771, at *3–4 (E.D. Cal. July 16, 2025) (concluding petitioner showed a likelihood of success on procedural due process claim where evidence showed ICE did not provide noncitizen with an initial interview).

Kunkushi argues he is likely to succeed on this claim because Respondents neither notified him of the reasons for his re-detention upon revocation nor provided him a prompt informal interview after his return to custody. The Court agrees. ICE re-detained Petitioner on June 4, 2025. ICE did not notify Kunkushi of the reasons for revoking his release upon revocation until over a month after he was arrested. Nor did ICE provide him with a prompt informal interview after he was returned to custody. Respondents thus failed to comply with the revocation procedures that Section 241.13(i)(3) requires them to follow when revoking release of a noncitizen who has been ordered removed.

For these reasons, Kunkushi has clearly shown he is likely to succeed on the merits of this claim. Accordingly, this *Winter* factor weighs in favor of granting preliminary injunctive relief.

**B.    Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Petitioner has clearly shown that Respondents likely deprived him of his procedural due process

rights when they re-detained him without adequate notice or an informal interview. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2578207, at *3 (N.D. Cal. Sep. 5, 2025) ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this *Winter* factor weighs in favor of granting preliminary injunctive relief.

**C.      Balance of Equities and Public Interest**

Kunkushi and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). He also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford him with adequate procedural safeguards before his re-detention. Respondents, by contrast, will suffer minimal injury with a short delay in re-detaining Kunkushi. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at *4.

Accordingly, this *Winter* factor weighs in favor of granting preliminary injunctive relief.

**D.      Bond**

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to

the amount of security required, *if any.*"'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

**IV.    CONCLUSION**

For the above reasons, the motion for a preliminary injunction is **GRANTED** as follows:

1.    Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Kunkushi from immigration custody. Respondents must file a declaration by May 8, 2026, confirming he has been released from immigration custody. Respondents are further **ORDERED** to place Kunkushi on the same conditions of release that existed before his re-detention and must not impose any additional restrictions, unless deemed necessary at a future hearing.

2.    Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are preliminarily **ENJOINED** from re-detaining Kunkushi without adequate notice and a prompt informal interview as required under 8 C.F.R. § 241.13(l)(3).

3. Because the Court finds that Petitioner is entitled to full scope the requested relief based on his revocation procedures claim, the Court does not reach whether he is entitled to the same relief as to his remaining claim. *See Doe v. Noem*, 781 F. Supp. 3d 1055, 1067 n.2 (E.D. Cal. Apr. 17, 2025) (declining to address petitioner's remaining immigration-related claims because he was entitled to temporary injunctive relief under his APA claim); *L.G.M.L. v. Noem*, No. No. 25-2942, 2025 WL 2671690, at *16 (D.D.C. Sep. 18, 2025) (declining to address petitioners' remaining immigration-related claims where petitioners were entitled to temporary injunctive relief on TVPRA claim); *Okyem v. Noem*, No. 25-CV-2120, 2025 WL 2551137, at *3 (C.D. Ill. Apr. 21, 2025) (declining to address petitioner's due process or Declaratory Judgment Act claims because petitioner was entitled to temporary injunctive relief on APA claims).

**IT IS SO ORDERED.**

Dated: May 7, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE